In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2384

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KORDELL PAYNE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2018-CR-172-PP — **Pamela Pepper**, *Chief Judge.*

SUBMITTED JUNE 9, 2020[*] — DECIDED JULY 8, 2020

Before SYKES, *Chief Judge,* and KANNE and BRENNAN, *Circuit Judges.*

BRENNAN, *Circuit Judge.* A defendant pleaded guilty to the crime of felon in possession of a firearm. The law now requires that the defendant's knowledge of his felon status be

[*] We granted the parties' joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C).

reviewed as part of such a plea, which was not done. We consider whether, but for that clear and obvious error, there is a reasonable probability the defendant would not have entered a guilty plea. Such a probability exists when, given the entire record, a jury might believe the defendant was plausibly ignorant of his status as a felon.

**I**

One night in June 2018, Milwaukee police officers heard gunshots. They sped toward the sounds and saw two men crossing the street. Upon seeing the officers, one of the men, Kordell Payne, ran. The officers pursued him and saw him throw a pistol into a yard. After catching up with Payne and arresting him, the officers recovered the pistol, which was loaded.

Once in custody, Payne attempted to hide his identity; he told the officers his name was "Jeffrey Demps" and provided a false birthdate. He also said he was not a felon. After fingerprinting, the officers learned Payne had outstanding warrants for absconding from state probation and three prior felony convictions.

In 2008, when Payne was 20-years old, he was convicted of child abuse (he admitted to breaking his girlfriend's child's arm) and driving a stolen vehicle (he was stopped in a stolen car while on pre-trial release). *See* WIS. STAT. §§ 943.23(3)(a) (felony operating vehicle without owner's consent), 948.03(2)(b) (felony physical abuse of a child). For these two felonies Payne received concurrent sentences of 15 months' imprisonment with 15 months' supervision, but the sentences were stayed pending successful completion of three years' probation with six months in the Milwaukee County House

of Correction. Payne's probation was eventually revoked in both cases, so he served 13 months in confinement on the concurrent sentences. In 2014, Payne was convicted of a third felony, failure to comply with a police officer; he hid from officers who were attempting to take him into custody for holding hostage a domestic partner and her child. *See* WIS. STAT. § 946.415(2). Payne also was convicted of misdemeanor battery for the injuries he caused to his partner. *See* WIS. STAT. § 940.19(1). For the felony, Payne was sentenced to exactly one year in state prison, and for the misdemeanor he was sentenced to 225 days in the House of Correction.

After being charged for possessing a firearm as a felon, 18 U.S.C. §§ 922(g), 924(a)(2), Payne pleaded guilty without a plea agreement. The district court conducted a thorough colloquy to determine whether Payne's guilty plea was knowing and voluntary, and it confirmed Payne's admissions that he possessed a firearm that had traveled in interstate commerce and that he previously had been convicted of a crime punishable by a term of imprisonment exceeding one year. Nothing in the colloquy revealed definitively whether Payne had known he was a convicted felon at the time he possessed the gun.

Payne asked the district court to mitigate his sentence based on his low educational attainment and mental-health issues. He had been placed in special education at an early age, he had earned only 0.25 high school credits, and he had diagnosed bipolar disorder, anxiety, and depression. He also posited his early and heavy marijuana use may have stinted his brain development. Citing Payne's mental-health condition, the district court sentenced him to 41 months in prison,

10 months below the bottom of his Guidelines range of 51 to 63 months' imprisonment.

Ten days after Payne was sentenced, the Supreme Court held that to be convicted of such a status offense, a defendant must have known "he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019). Payne argues there is a reasonable probability he would not have pleaded guilty had he known about this element, and he requests, for the first time on appeal, to withdraw his guilty plea.

## II

In *Rehaif* the Supreme Court held that a defendant's knowledge of the status that prevents his legal possession of a firearm is an element of a crime under 18 U.S.C. §§ 922(g), 924(a)(2). 139 S. Ct. at 2195–96; *see also United States v. Maez*, 960 F.3d 949, 954–55 (7th Cir. 2020) (knowledge of status, not knowledge of criminal prohibition, is required). Although *Rehaif* involved a defendant's knowledge of his immigration status, the Supreme Court acknowledged its decision's application to a defendant who is unaware of his felon status, for example because he "was convicted of a prior crime but sentenced only to probation." 139 S. Ct. at 2198. This decision upset not only the law of this circuit but the unanimous conclusion of all the courts of appeals. *United States v. Williams*, 946 F.3d 968, 970 (7th Cir. 2020).

Based on this change in the law, Payne asks this court to vacate his conviction and allow him to withdraw his guilty plea. Given the timing of *Rehaif*, Payne never moved to withdraw his plea in the district court, so his request to do so now must be reviewed for plain error. *See id.* at 971 (citing FED. R.

CRIM. P. 52(b)). Plain error has four elements: (1) an error,
which (2) was clear and obvious, (3) affected the defendant's
substantial rights, and (4) seriously affects the fairness, integ-
rity, or public reputation of judicial proceedings. *Id.*;
*see also United States v. Olano*, 507 U.S. 725, 732 (1993).

The parties agree that the failure to acknowledge the sta-
tus element was a clear and obvious error, so this case turns
on whether the error affected Payne's substantial rights and
the integrity of the judicial proceedings. *See Henderson
v. United States*, 568 U.S. 266, 269 (2013) (plain error is deter-
mined based on law at time of review). Payne bears the bur-
den of persuasion on the first question. *See Williams*, 946 F.3d
at 973. To meet it, he "must show a reasonable probability
that, but for the error, he would not have entered the plea."
*Id.* at 971 (quoting *United States v. Dominguez Benitez*, 542 U.S.
74, 83 (2004)). We have determined such a probability exists
when a defendant would have had, post-*Rehaif*, a "plausible
ignorance defense," meaning a jury might believe, despite
prior felony convictions, that the defendant was ignorant of
his sentencing exposure. *Id.* at 973–74. To assess whether
Payne could mount such a defense, we consider the entire rec-
ord, including Payne's criminal history, not just the transcript
of the plea proceedings. *See Maez*, 960 F.3d at 960 (citing
*Dominguez Benitez*, 542 U.S. at 80).

Based on the presentence investigation report—to which
Payne did not object—it is highly implausible Payne was ig-
norant of his felon status. At the time of his arrest for firearm
possession, Payne had been convicted of three felonies in state
court, each of which resulted in a sentence exceeding one
year. True, for the first two of those convictions, Payne's con-
current sentences of 15 months' imprisonment were stayed in

favor of 3 years of probation. But his probation was revoked
and his stayed sentence was imposed, resulting in him actu-
ally serving 13 months in confinement. And for his third fel-
ony, Payne was sentenced to a year in Wisconsin State Prison.

As the dockets in Payne's three state court cases reveal,
Payne was told he could not possess firearms as a felon during
sentencing for each of his prior felony convictions. Wiscon-
sin's criminal law so requires: WIS. STAT. § 973.176(1) provides
"FIREARM POSSESSION. Whenever a court imposes a sentence
or places a defendant on probation regarding a felony convic-
tion, the court shall inform the defendant of the requirements
and penalties applicable to him or her … ." While failure to
give this warning does not prevent a conviction, *State v. Phil-
lips*, 172 Wis. 2d 391, 395 (Ct. App. 1992), we can strongly pre-
sume, from the express statements in the three docket sheets
and the common practice in the courts in which he was con-
victed, that this firearms admonition was given at each of
Payne's felony sentencings. *See United States v. Huntsberry*,
956 F.3d 270, 285 (5th Cir. 2020) (presuming state court fol-
lowed state law requiring it to inform defendant of penalties
of his conviction); *United States v. Burghart*, 939 F.3d 397, 405
(1st Cir. 2019) (same). These admonitions would have made
Payne aware not only of his status, but also of the criminal
prohibition against his possessing a firearm because of his sta-
tus, more than is required to prove the *Rehaif* element.
*See Maez*, 960 F.3d at 954–55.

Payne contends these state court records would not have
affected his plea decision in this case because he would have
objected to their admission at trial. But as we have noted,
when we review alleged errors in guilty plea proceedings, the
record is not circumscribed by admissibility. *See id.* at 960.

And it is well-settled that we may judicially notice court records as evidence of prior judicial actions. *Huntsberry*, 956 F.3d at 285 (citing 21B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5106.4 (2d ed. 2019)); *see also* FED. R. EVID. 201(b) (we may judicially notice any "fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Payne argues a jury may well believe he did not understand his felon status, despite what he was told during sentencing for his prior convictions, because of his low-educational attainment, early and heavy marijuana use, and childhood mental-illness diagnoses. But the limited evidence that Payne has provided is insufficient to support a jury finding that he was unable to understand the state judges' instructions. As examples, he has not shown that he ever challenged a prior conviction on the basis of his competency, *see* WIS. STAT. § 971.14, or that he ever pleaded not guilty by reason of mental disease or defect, *see* WIS. STAT. § 971.15. And Payne does not suggest that he would be able to produce additional evidence of his limited mental capacity on remand.[1] Although it is possible cognitive or psychological issues might impair a defendant's understanding of his sentencing exposure, without more of a factual or procedural predicate that argument does not rise here to the level of plausibility.

We can conceive of fact patterns and procedural histories on which a plausible ignorance defense on a status crime could conceivably allow for the withdrawal of a guilty plea.

---

[1] We considered but rejected a limited remand of this case for that purpose.

*See, e.g., United States v. Triggs*, 2020 WL 3466909 (7th Cir. July 1, 2020). But because Payne was convicted of three felonies before he was charged, and he was present at various hearings at which Wisconsin's statutory firearms prohibition would have been read, we conclude he has not established a plausible ignorance defense.

One final note: for the first time in his reply brief, Payne argues the error here was structural. Except in limited circumstances, arguments raised by criminal defendants for the first time in reply are waived, *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019), and Payne does not suggest any exception applies. In any event, we recently ruled that omission of the *Rehaif* element is not a structural error. *Maez*, 960 F.3d at 957–58.

                                                        AFFIRMED